UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMERICAN GNC CORPORATION,<br><br>          Plaintiff,<br>     v.<br><br>NINTENDO CO. LTD., and NINTENDO OF AMERICA, INC.,<br><br>          Defendants. | CASE NO. 2:23-cv-00302-TL<br><br>ORDER ON MOTION TO DISMISS |

This is an action for patent infringement involving motion-sensor technology used in the popular Nintendo Switch video game console. This matter is before the Court on Defendants Nintendo Co., Ltd., and Nintendo of America, Inc.'s Motion to Dismiss (Dkt. No. 24). Having reviewed Plaintiff American GNC Corporation's response (Dkt. No. 29), Defendants' reply (Dkt. No. 30), and the relevant record, the Court DENIES the motion.

I.     BACKGROUND

Plaintiff is a California technology corporation specializing in the fields of guidance, navigation, control, and communications. Dkt. No. 1 ¶ 2. Defendant Nintendo Co., Ltd., is a

Japanese company. *Id.* ¶ 8. Defendant Nintendo of America, Inc., is a Washington corporation. *Id.* ¶ 9. Plaintiff brings this action against Defendants for infringement of U.S. Patent No. 6,508,122 ("the '122 Patent") and U.S. Patent No. 6,671,648 ("the '648 Patent"). *Id.* ¶ 1; *see also* Dkt. Nos. 1-1 ('122 Patent), 1-2 ('648 Patent). Defendants only challenge the '648 Patent in its motion to dismiss. Dkt. No. 24 at 2.

The '648 Patent relates to the utilization of micro electronic mechanical systems ("MEMS"), also referred to as "micromachines," in the construction of inertial measurement units ("IMU"). *See* Dkt. No. 1-2 at 29 (1:18–29, 2:10–14). The patent recites a "micro inertial measurement unit" that uses MEMS technology, including angular rate sensors and accelerometers, to take motion measurements with smaller hardware and less power consumption than a "conventional" IMU. *See id.* at 29–30 (2:15–4:28); *see also id.* at 29 (1:45–2:9) (detailing "present deficiencies" of conventional IMUs). The micro IMU addressed an "acknowledged need" in government and private industry for reliable and accurate devices that were smaller, cheaper, and better performing than previous IMUs. Dkt. No. 1 ¶¶ 19–24.

Claim 1 of the '648 patent recites:

> 1. A micro inertial measurement unit, comprising:
>
> an angular rate producer comprising a X axis angular rate detecting unit which produces a X axis angular rate electrical signal, a Y axis angular rate detecting unit which produces a Y axis angular rate electrical signal, and a Z axis angular rate detecting unit which produces a Z axis angular rate electrical signal;
>
> an acceleration producer comprising a X axis accelerometer which produces a X axis acceleration electrical signal, a Y axis accelerometer which produces a Y axis acceleration electrical signal, and a Z axis accelerometer which produces a Z axis acceleration electrical signal; and
>
> an angular increment and velocity increment producer, which is electrically connected with said X axis, Y axis and Z axis angular rate detecting units and said X axis, Y axis and Z axis

accelerometers, receiving said X axis, Y axis and Z axis angular
rate electrical signals and said X axis, Y axis and Z axis
acceleration electrical signals from said angular rate producer and
said acceleration producer respectively, wherein said X axis, Y
axis and Z axis angular rate electrical signals and said X axis, Y
axis and Z axis acceleration electrical signals are converted into are
digital angular increments and digital velocity increments
respectively.

Dkt. No. 1-2 at 40 (23:43–24:21). Claim 2 recites "a thermal controlling means for maintaining a predetermined operating temperature" of these components. *Id.* (24:22–26). Claims 3 and 4 recite that electrical signals from the angular rate and acceleration producers are "analog angular rate voltage signals." *Id.* (24:27–44).

Figure 1 of the '648 Patent (Dkt. No. 1-2 at 3) depicts the micro IMU process:



Figure 1

Figure 11 (Dkt. No. 1-2 at 13) provides a more detailed embodiment of the claims:



Figure 11

ORDER ON MOTION TO DISMISS - 3

Defendants now bring the instant motion seeking dismissal of the Second Count of the Complaint (Dkt. No. 1 ¶¶ 84–102), which alleges infringement of the '648 Patent. Dkt. No. 24; *see also* Dkt. No. 30 (reply). Plaintiff opposes. Dkt. No. 29.

## II.     LEGAL STANDARD

The Court applies Federal Circuit law to "substantive and procedural issues unique to and intimately involved in federal patent law," and Ninth Circuit law to other substantive and procedural issues. *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, 830 F.3d 1335, 1338 (Fed. Cir. 2016).

A defendant may seek dismissal when a plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In reviewing a FRCP 12(b)(6) motion to dismiss, the Court takes all well-pleaded factual allegations as true and considers whether the complaint "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient, a claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 672. "When reviewing a dismissal pursuant to Rule . . . 12(b)(6), 'we accept as true all facts alleged in the complaint and construe them in the light most favorable to plaintiff[ ], the non-moving party.'" *DaVinci Aircraft, Inc. v. United States*, 926 F.3d 1117, 1122 (9th Cir. 2019) (alteration in original) (quoting *Snyder & Assocs. Acquisitions LLC v. United States*, 859 F.3d 1152, 1156–57 (9th Cir. 2017)).

Patent eligibility "is a question of law that may involve underlying questions of fact." *MyMail, Ltd. v. ooVoo, LLC,* 934 F.3d 1373, 1379 (Fed. Cir. 2019). Patent eligibility can be determined at the Rule 12(b)(6) stage "when there are no factual allegations that, taken as true,

prevent resolving the eligibility question as a matter of law." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018). "[P]lausible factual allegations may preclude dismissing a case under § 101 where, for example, 'nothing on th[e] record . . . refutes those allegations as a matter of law or justifies dismissal under Rule 12(b)(6).'" *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1097 (Fed. Cir. 2016) (quoting *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1352 (Fed. Cir. 2016)).

### III.   DISCUSSION

Defendants argue that the subject matter of the '648 patent—in their description, "gathering conventional sensor data and converting it to digital information"—is an abstract idea and not patent-eligible. Dkt. No. 24 at 2. In opposition, Plaintiff argues that the subject matter "improves on existing technology" and is patent-eligible. Dkt. No. 29 at 10.

### A.   Patentable Subject Matter

Section 101 of the Patent Act governs patent eligibility. It states:

> Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

35 U.S.C. § 101. The United States Supreme Court has held that § 101 "contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (quoting *Ass'n for Molecular Pathology v. Myriad Genetics*, 569 U.S. 576, 589 (2013)). These exceptions are driven by a concern about "pre-emption"—that is, "'concern that patent law not inhibit further discovery by improperly tying up the future use of these building blocks of human ingenuity." *Id.* (quoting *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 85 (2012)). "At the same time, [courts] tread carefully in construing this exclusionary principle lest it swallow all of patent

1 law." *Id.* at 217. This is because "[a]t some level, 'all inventions . . . embody, use, reflect, rest
2 upon, or apply'" these exceptions. *Id.* (quoting *Mayo*, 566 U.S. at 71). Thus, a court "must
3 distinguish between patents that claim the 'buildin[g] block[s]' of human ingenuity and those
4 that integrate the building blocks into something more, thereby 'transform[ing]' them into a
5 patent-eligible invention." *Id.* (quoting *Mayo*, 566 U.S. at 89, 72).

6       In *Alice*, the Supreme Court applied a two-step framework (first set forth in *Mayo*) for
7 examining patent eligibility. *Id.* at 217–18. First, a court determines "whether the claims at issue
8 are directed to" laws of nature, natural phenomena, or abstract ideas. *Id.* at 217 (citing *Mayo*, 566
9 U.S. at 77). If so, the court then looks for an "'inventive concept'—*i.e.*, an element or
10 combination of elements that is 'sufficient to ensure that the patent in practice amounts to
11 significantly more than a patent upon the [ineligible concept] itself.'" *Id.* at 217–18 (quoting
12 *Mayo*, 566 U.S. at 72–73). "Patent eligibility is ultimately a question of law that may be based on
13 underlying factual findings." *Hawk Tech. Sys., LLC v. Castle Retail, LLC*, 60 F.4th 1349, 1356
14 (Fed. Cir. 2023) (citing *Berkheimer v. HP Inc.* 881 F.3d 1360, 1365 (Fed. Cir. 2018)).

15 **B.**     **Whether the '648 Patent Contains Patentable Subject Matter**

16       As an initial matter, Defendants assert that Claim 1 of the '648 patent is representative of
17 all claims. Dkt. No. 24 at 4. Plaintiff does not appear to dispute this assertion, instead defending
18 Claim 1 and making no meaningful arguments about the remaining dependent claims. *See, e.g.*,
19 Dkt. No. 29 at 9, 13, 16, 19; *see also* Dkt. No. 1 ¶¶ 85–87 (asserting infringement of "at least
20 claim 1"); *Int'l Bus. Mach. Corp. v. Zillow*, 549 F. Supp. 3d 1247, 1256 (W.D. Wash. 2021),
21 *affirmed*, 50 F.4th 1371 (Fed. Cir. 2022) ("[C]laims may be treated as 'representative' if a
22 patentee makes no 'meaningful argument for the distinctive significance of any claim limitations
23 not found in the representative claim' . . . ." (quoting *Berkheimer*, 881 F.3d at 1365)). Therefore,
24 the Court will limit its analysis to Claim 1.

### 1. *Alice* Step One: Patent-Eligible Concept

Defendants argue that "the concept at the 'heart' of the claim is nothing more than the abstract idea of gathering one form of data (acceleration and angular rate signals) and converting it into another form of data (digital angular and velocity increment information)." Dkt. No. 24 at 6. Plaintiff counters that the '648 Patent is directed to "a technologically improved 'micro' IMU system—one that was the first to successfully integrate MEMS angular rate and acceleration sensors, along with the attendant benefits and other advances described" in the brief. Dkt. No. 29 at 23.

A court's analysis at Step One "'must focus on' the claim language." *Hawk*, 60 F.4th at 1357 (quoting *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 769 (Fed. Cir. 2019)). "To determine whether a claim is 'directed to' a patent ineligible concept, [courts] evaluate 'the focus of the claimed advance over the prior art to determine if the claim's character as a whole is directed to excluded subject matter.'" *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1361 (Fed. Cir. 2023) (quoting *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1315 (Fed. Cir. 2021)). "[W]hile the specification may help illuminate the true focus of a claim, when analyzing patent eligibility, reliance on the specification must always yield to the claim language in identifying that focus." *Id.* (quoting *ChargePoint*, 920 F.3d at 766). Still, courts must not describe the claims at "'such a high level of abstraction and untethered from the language of the claims' that the claims would be virtually guaranteed to be abstract." *Id.* (quoting *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016)).

Based on the language of the claim, the Court finds that Claim 1 of the '648 Patent is directed to a tangible, non-abstract machine that incorporates MEMS technology and is cheaper, smaller, and more reliable. *See, e.g.*, *Immersion Corp. v. Fitbit, Inc.*, 313 F. Supp. 3d 1005 (N.D. Cal. 2018) ("The weight of the claim clearly focuses on a tangible, non-abstract device as the

invention, which, through the allegedly unconventional combination of components, contains [a] new and useful feature . . . ."); *Polaris Innov. Ltd. v. Kingston Tech. Co., Inc.*, 223 F. Supp. 3d 1026, 1033 (C.D. Cal. 2016) ("Though generic computers running code that implements abstract concepts have regularly been found to be patent-ineligible, non-generic computers are patent-eligible as machines."). Claim 1 recites a "micro inertial measurement unit" (Dkt. No. 1-2 at 40 (23:43)) comprised of "an angular rate producer" (*id.* (23:44)), "an acceleration producer" (*id.* (24:4)), and "an angular increment and velocity increment producer" (*id.* (24:10)). The specification further illuminates this focus, as it details "a number of problems [that] need to be addressed" to build a micro IMU, including "mechanical structures," "electronic circuitry," "thermal requirements design," and "[t]he size and power" of the circuitry. *Id.* (6:27–40).

Defendants' asserted abstract idea—that is, "gathering one form of data" and "converting it into another form of data" (Dkt. No. 24 at 6)—is formulated at too high a level of generality. As Plaintiff puts it, the formulation "is so generalized and vague that it could apply without change to a scanner, a record player, a traffic camera, a home automation system, or a karaoke machine." Dkt. No. 29 at 9. While Claim 1 may "at some level embody, use, reflect, rest upon, or apply" an abstract idea, *Mayo*, 566 U.S. at 71, it does not *recite* an abstract idea, and the heart of the claim is a tangible, non-abstract machine that offers improvements upon prior machines. *See Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1259 (Fed. Cir. 2017) (finding claims directed to "an improved computer memory system, not to the abstract idea of categorical data storage"); *cf. In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 612 (Fed. Cir. 2016) (finding claims directed to an abstract idea where specification "does not describe a new telephone, a new server, or a new physical combination of the two" and "fails to provide any technical details for the tangible components, but instead predominately describes the system and methods in purely functional terms").

The United States Patent and Trademark Office has issued guidance on assessing patent subject matter eligibility in its Manual of Patent Examining Procedure ("MPEP"). The Court finds its discussion of the judicial exceptions to be instructive here. *See In re Hubbell*, 709 F.3d 1140, 1146 (Fed. Cir. 2013) ("Although the MPEP is not binding on this court, we can take judicial notice of this provision to the extent it does not conflict with the statutory text." (citing *Enzo Biochem, Inc. v. Gen-Probe Inc.*, 323 F.3d 956, 964 (Fed. Cir. 2002))); *see also, e.g.*, *CreAgri, Inc. v. Pinnaclife, Inc.*, No. C11-6635, 2013 WL 6673676, at *20 (N.D. Cal. Dec. 18, 2013) (relying in part on MPEP to evaluate patent utility). The MPEP instructs examiners to "be careful to distinguish between claims that **recite** an exception (which require further eligibility analysis) and claims that merely **involve** an exception (which are eligible and do not require further eligibility analysis)." MPEP § 2106.04 (emphases in original). The MPEP continues:

> An example of a claim that recites a judicial exception is 'A machine comprising elements that operate in accordance with F=ma.' This claim sets forth the principle that force equals mass times acceleration (F=ma) and therefore recites a law of nature exception. Because F=ma represents a mathematical formula, the claim could alternatively be considered as reciting an abstract idea. Because this claim recites a judicial exception, it requires further analysis . . . . An example of a claim that merely involves, or is based on, an exception is a claim to 'A teeter-totter comprising an elongated member pivotably attached to a base member, having seats and handles attached at opposing sides of the elongated member.' This claim is based on the concept of a lever pivoting on a fulcrum, which involves the natural principles of mechanical advantage and the law of the lever. However, this claim does not recite these natural principles and therefore is not directed to a judicial exception . . . .

*Id.* Here, Claim 1 is akin to the teeter-totter claim: it relates to a specific machine that *involves* or is *based on* a judicial exception (the abstract idea of gathering, processing, and converting data), but does not *recite* it and is therefore not directed to it. *See also* MPEP § 2106.04(a)(1) (providing "[n]on-limiting hypothetical examples of claims that do not recite (set forth or

describe) an abstract idea," including "a printer," "a washing machine," and "an earring," each with enumerated components).

Defendants' authorities are distinguishable. For example, in *Hawk*, the patent recited "a method of viewing . . . multiple simultaneously displayed and stored video images," and used result-based functional language like "receiving," "digitizing," and "displaying." 60 F.4th at 1353, 1357. In *Electric Power Group v. Alstom S.A.*, the patent recited "a method of detecting events on an interconnected electric power grid in real time over a wide area and automatically analyzing the events," and was focused on a combination of abstract-idea processes, "not any particular assertedly inventive technology for performing those functions." 830 F.3d. 1350, 1351, 1354 (Fed. Cir. 2016). And in *iLife Technologies v. Nintendo of America*, the patent recited a "system within a communications device capable of evaluating movement of a body relative to an environment," but "fail[ed] to provide any concrete detail for performing the associated functions." 839 F. App'x 534, 534, 536 (Fed. Cir. 2021). In contrast here, Claim 1 does not use functional language, but rather recites a specific inventive technology— "micro" or MEMS technology—to perform its functions and details the components, both in the claim and in the specification. Nowhere do Defendants point to a case where a patent reciting such a non-generic machine was found to be directed to an abstract idea.

Defendants' other arguments are unavailing. Defendants argue that the '648 Patent invokes "generic hardware components." Dkt. No. 24 at 9–10. But Claim 1 invokes not generic components but "micro" components that are combined according to the specification and which result in a variety of improvements upon conventional IMUs. *See* Dkt. No. 1-2 at 30 (3:14–28). Relatedly, Defendants argue that the claims are "drafted at a high level of generality" and train their focus on terms like "angular rate producer" and "acceleration producer," among others, calling them "high-level, black box modules" with "broad functions." *Id.* at 11. But in doing so,

Defendants continue to overlook or simply ignore the key phrase in Claim 1: "micro inertial measurement unit." Dkt. No. 1-2 at 40 (23:45). Plaintiff argues that "[t]he Court must interpret the claims as directed to a 'micro' IMU that uses micro-electrical-mechanical MEMS sensors." Dkt. No. 29 at 18. At this stage, the Court accepts Plaintiff's plausible construction, and it would be inappropriate to resolve the disputed factual issue prior to the claim construction phase of the litigation and without factual discovery. *See Aatrix*, 882 F.3d at 1125 (Fed. Cir. 2018) (holding patent eligibility can be determined at the Rule 12(b)(6) stage "when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law"); *MyMail*, 934 F.3d at 1381 (holding that district court erred by failing to address the parties' claim construction dispute); *see also Datanet LLC v. Microsoft Corp.*, No. C22-1545, 2023 WL 3947829, at *6 (W.D. Wash. June 12, 2023) ("Here, given the procedural posture, the Court accepts Plaintiff's construction of the claims and their asserted improvements upon the existing art as plausible based on the language of the claims as informed by the specification.").

       Finally, Defendants argue that Plaintiff is a "serial litigant raising a significant threat of preemption." Dkt. No. 24 at 16. As discussed above, however, pre-emption is addressed by the analysis of judicial exceptions under § 101, and the Court finds that the '648 Patent does not attempt to put a lock on the abstract idea of gathering and converting data. Moreover, "the accused infringers in the five prior litigations Defendants mention *did not* move to invalidate the claims of the '648 Patent under Section 101." Dkt. No. 29 at 29 (emphasis in original).

       For these reasons, the Court finds that Claim 1 of the '648 Patent is not directed to an abstract idea and is patent-eligible at *Alice* Step One. However, even if Claim 1 is directed to an abstract idea, the Court also finds that factual questions preclude dismissal at *Alice* Step Two, as discussed below.

### 2.  *Alice* Step Two: Patent-Eligible Application

"At *Alice*/*Mayo* step two, [courts] 'consider the elements of [the] claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application.'" *Trinity Info Media*, 72 F.4th at 1365 (quoting *Alice*, 573 U.S. at 217). "Transformation into a patent-eligible application requires more than simply stating the abstract idea while adding the words 'apply it.'" *Id.* (quoting *Mayo*, 566 U.S. at 72). "Such inventive features must be more than 'well-understood, routine, conventional activity.'" *Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 704 (Fed. Cir. 2023) (quoting *Intell. Ventures I LLC v. Cap. One Fin. Corp.*, 850 F.3d 1332, 1341 (Fed Cir. 2017)). "[T]he mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice*, 573 U.S. at 223.

Defendants argue that the '648 Patent "simply invoke[s] conventional electronic components" and "can be implemented via existing off-the-shelf components." Dkt. No. 24 at 13; *see also* Dkt. No 30 at 14 ("[T]he '648 claims recite nothing but generic hardware components . . . ."). Plaintiff argues that factual questions about the conventionality of the micro IMU components preclude dismissal at this stage. *See* Dkt. No. 29 at 27–29.

The Court agrees that there are factual questions that preclude a grant of dismissal at this stage of the case. "Whether something is well-understood, routine, and conventional to a skilled artisan at the time of the patent is a factual determination." *Berkheimer*, 881 F.3d at 1369. Here, Claim 1 recites a micro IMU that is comprised of plausibly unconventional components that transform the abstract idea into a patent-eligible concept.

Defendants argue that the '648 Patent admits that the use of MEMS technology was conventional. *See* Dkt. No. 24 at 9–10, 12–13; Dkt. No. 30 at 14–15. But while the specification indicates that MEMS technology *existed* at the time of the patent, the specification does not

admit that such technology was "conventional." For example, Defendant quotes portions of the specification that refer to "conventional" angular rate producers and accelerometers. *See* Dkt. No. 24 at 13; Dkt. No. 30 at 15 (quoting Dkt. No. 1-2 at 29 (1:45–54)). But the discussion of these conventional components highlights their "present deficiencies" (Dkt. No. 1-2 at 29 (2:6)) and the comparative benefits offered by the incorporation of MEMS technology into an IMU (*id.* (2:11–14)). Defendant further quotes portions of the specification that refer to "prolific MEMS angular rate sensor approaches" (*id.* (2:24)) and a "typical example" of a MEMS accelerometer (*id.* (2:38)). Dkt. No. 30 at 15; *see also* Dkt. No. 1-2 at 36 (16:46) (referring to "[e]existing MEMS technologies"). But while such language *suggests* that MEMS technology was well understood or conventional at the time of the '648 Patent, these statements are not admissions, and Plaintiff vigorously disputes such a characterization. *See* Dkt. No. 29 at 25 ("[W]ithout a clear statement admitting conventionality of **claimed components**, which does not exist here, the Court cannot determine elements conventional as a matter of fact on a Motion to dismiss." (emphasis in original)); *see also Nat. Alts. Int'l, Inc. v. Creative Compounds*, 918 F.3d 1338, 1347 (Fed. Cir. 2019) (in motion for judgment on pleadings, holding that court may not determine conventionality "absent a clear statement to that effect in the specification, complaint, or other material properly before the court"); *Exergen Corp. v. Kaz USA, Inc.*, 725 F. App'x 959, 965 (Fed. Cir. 2018) ("Something is not well-understood, routine, and conventional merely because it is disclosed in a prior art reference."). The specification also asserts that "there is not yet available high performance, small size, and low power consumption IMUs." Dkt. No. 1-2 at 29 (2:50–51).

      For these reasons, the Court also finds that the '648 Patent may contain an inventive concept and cannot be dismissed at this stage of the case.

IV. CONCLUSION

Accordingly, the Court DENIES Defendants' Motion to Dismiss (Dkt. No. 24).

Dated this 10th day of January 2024.

Tana Lin
United States District Judge